7234

### ROSS v. LIPSCOMB.

1. MUNICIPAL ELECTIONS—COUPON BONDS.—Under the Act of 1908, 25 Stat., investing the board of public works of the town of Gaffney with additional powers, a notice of an election to vote upon an aggregate amount of bonds for three municipal purposes, failing to specify the amount to be used for each purpose, and to submit the several propositions separately, render the election illegal and the bonds void.

2. IBID.—IBID.—Is a municipal election under the general law on issuance of an amount of bonds for several purposes without designating

the amount to be used for each, and submitting all the questions in one, legal?

3. Constitutionality of the Act of 1908, 25 Stat.,    not passed on because not necessary to the determination of this case and because the parties raising the question are invoking its provisions. *Dicta.*

4. Municipal Bonds.—Under Sec. 2008 of the Code, 1902, a municipality may issue bonds payable in gold. *Dicta.*

Petition in the original jurisdiction of this Court by W. H. Ross, mayor, W. O. Johnson, W. L. Settlemyer, T. H. Littlejohn, R. S. Lipscomb, B. A. Holmes and Gus Abernathy, aldermen, of the town of Gaffney for writ of mandamus against J. N. Lipscomb, B. G. Clary and E. R. Cash, board of public works of Gaffney.   The petition is:

1st. "That the petitioners, W. H. Ross, as mayor, and W. O. Johnson, W. L. Settlemyer, T. H. Littlejohn, K. S. Lipscomb, B. A. Holmes and Gus Abernathy, as aldermen, compose the town council of the town of Gaffney, S. C.

2d. "That the respondents, J. N. Lipscomb, B. G. Clary and E. R. Cash, are the duly constituted board of public works of the town of Gaffney, S. C.

3d. "That in the duties prescribed by law and devolving upon the town council of Gaffney, it is the duty of said town council, when a majority of the freeholders of the town of Gaffney shall petition for an election to be held to vote bonds for the purpose of establishing sewerage, water works and electric lights, one or all, to order an election for the said purposes in the manner prescribed by law.

4th. "That on March 5, 1909, a petition, signed by a majority of the freeholders of the town of Gaffney, was duly presented to the town council, asking for an election to be ordered to vote $125,000 bonds for the extension of the electric light and water works and the installation of a sewerage system for the town of Gaffney.   Said petition is made a part of this petition and is marked Exhibit 'A,' except that the names signed thereto are omitted.

5th. "Pursuant to said petition an election was duly ordered to be held in Gaffney, S. C., on March 31, 1909, for the purpose of ascertaining whether or not the town council of Gaffney, S. C., shall issue not more than $125,000 in bonds for the extension of the electric lights, water works and the installation of a sewerage system for the town, which said order is made a part of this petition and marked Exhibit 'B.'

6th. "That a notice of such election was duly published as required by law, as shown by the affidavit of W. E. Peeler, which is made a part of this petition and is marked Exhibit 'C.' The notice of said election is made a part of this petition and is marked Exhibit 'D.'

7th. "That pursuant to said notice and order an election was duly held, as provided by law, on March 31, 1909, in which election a majority of the votes cast by the qualified electors in said town were in favor of the issuance of said bonds, as shown by the certificate of the managers of the election, which is made a part of this petition and marked Exhibit 'E.'

8th. "That thereafter, pursuant to the result of said election, an ordinance was duly passed by the town council of Gaffney authorizing and directing the town council to issue coupon gold bonds to the amount not exceeding $125,000, bearing five per cent. interest per annum, and running forty years, optional after twenty years, etc , as shown by a copy of said ordinance, which is made a part of this petition and is marked Exhibit 'F.'

9th. "The certificate of Geo. E. Hood is made a part of this petition and is marked Exhibit 'G.'

10th. "That under the law it is the duty of the board of public works to sell the said bonds so issued by the town council of Gaffney and at once carry out the purposes for which the said bonds were issued, as shown by reference to an act of the General Assembly of South Carolina, approved the 19th of February, 1907, being No. 389, and an act of

the General Assembly of South Carolina, approved the 14th
day of February, 1908, being No. 563, of the 25th Statutes
of South Carolina, also Section 2008 in Volume I of the
Code of Laws of South Carolina, 2009, 2010.

11th. "That said board of public works, although the law
requires them to sell the said bonds and to apply the pro-
ceeds to the carrying out of the purposes for which the
same had been issued by the town council of Gaffney, have
failed and refused to sell the same and to enter upon the
establishment of the objects for which said bonds were
issued, in violation of their plain legal duties.

"Wherefore, your petitioners pray that an order be issued
by this Court requiring the said board of public works to
sell the said bonds and to do the other acts required of them
by law."

The answer is:

1st. "They admit all of the material allegations set forth
in the petition so far as the facts therein stated are con-
cerned, but deny that said election was held pursuant to law,
and allege that the said bonds are void and unsalable for
the following reasons: (1) That under and by virtue of
an act of the General Assembly of the State of South
Carolina, approved the 14th day of February, 1908,
being No. 563 of Volume XXV of the Statutes of South
Carolina, the said election was irregular and invalid in
the following particulars: That in Section 6 of said act
it is provided that, 'Whenever it may be deemed advisable
by the said board to issue bonds to extend the electric light
plant or water works in the town of Gaffney, or to secure
additional water supply for the said town of Gaffney, the
said town council of Gaffney shall submit the question of
issuing bonds for the extension or the improvement of the
said electric light plant or water works, one or both, to an
election of the qualified electors of the town of Gaffney, first
giving notice of such election by publishing in the newspaper
published in Gaffney, once a week for at least four weeks, a

notice of such election, setting forth the amount of bonds to be voted upon and the term of years which said bonds are to run, said election to be ordered in the discretion of the said board of public works, or upon the petition of one-third of the number of freeholders of the town of Gaffney, and under the law governing municipal elections. That if a majority of the electors voting at such election shall vote to issue bonds for the purpose of extending or improving the electric light plant or the water works plant, it shall be the duty of the town council of Gaffney to issue, or cause to be issued, such bonds; and when so issued the board of public works shall sell, or offer for sale, the same, after due advertisement, and use the moneys arising from the sale of such bonds for the purposes for which said bonds were voted, and for no other purpose, provided that no bonds issued shall run for a period of less than twenty years, nor for a period of more than forty years; shall not be sold for less than par or bear a rate of interest higher than five per cent. per annum, which interest may be payable semi-annually.' Section 7 of the same act provides that whenever the said board of public works deem it desirable or upon a petition of one-third of the freeholders of the town of Gaffney petitioning for an election for a sewerage system, and setting forth the amount of bonds to be voted for, an election shall be ordered, etc.

"That said election and the bonds issued in pursuance thereof are invalid and unsalable, in that the proposition submitted to the voters did not separately state the items nor the amount of bonds to be issued for the extension of the electric lights, for the extension of the water works, and for the installation of a sewerage system. That each of said propositions should have been submitted separately to the voters in order that they might express their choice fairly upon each issue so made. That by combining the three objects in one, and submitting the whole question of issuing bonds as a single proposition, the voters were com-

pelled to accept all or vote against all and did not have a fair opportunity of expressing their choice upon each of the propositions, which should have been submitted separately. That by reason of the foregoing facts, the said board of public works refused to sell said bonds.

"Wherefore, the respondents pray that the petition be dismissed."

The reply is:

1st. "That the petitioners are informed and believe that there is no statute or law in the State requiring each of the propositions submitted in said election to be submitted separately.

2d. "That the almost unanimous vote in said election shows conclusively that the proposition as submitted was assented to and endorsed by the qualified voters of the town.

3d. "That the act of the General Assembly upon which the respondents rely in so far as the same applies to elections for the purpose of voting bonds for electric lights, water works and sewerage is unconstitutional, null and void, in that the original act was approved February 19, 1907, and is numbered 389 of Volume XXV of the Statutes of South Carolina, the title of which act reads as follows: 'An Act to Create a Board of Public Works for the Town of Gaffney, and to Define Their Powers and Duties and Compensation.' That said act was amended and re-enacted by an act approved the 14th day of February, 1908, the title of which is as follows: 'An Act to Amend an Act Entitled an Act to Create a Board of Public Works for the Town of Gaffney, and to Define Their Powers and Duties and Compensation, so as to Limit the Amount of Indebtedness and to Declare Valid All Obligations Made by the Board of Public Works, to Provide for the Election of Successors to Members of the Present Board of Public Works.' That said act violates Section 17 of Article III of the Constitution of 1895, in that it relates to more than one subject which is not included in the title and is not germane to the title of said act, in

that said act goes beyond the purposes expressed in the title
and attempts to provide a scheme and plan for the ordering
and holding of elections by the town council for the pur-
pose of voting bonds, which said scheme or plan is no part
of the powers, duties and compensation of the board of
public works; nor is the same related in any way to the elec-
tion of successors to the members of the present board of
public works.

4th. "Further, that said act is in contravention of Article
II, Section 13, of the Constitution of 1895, which provides
that in authorizing the said election in any incorporated city
or town in this State for the purpose of bonding same, the
General Assembly shall prescribe as a condition precedent
to the holding of said election a petition from a majority of
the freeholders of said city or town as shown by its tax
books, with which provision Section 2008, Volume I, Code
of Laws of South Carolina, is consistent, while that said
act relied upon by respondent is inconsistent in that said
act provides that such election shall be ordered whenever it
may be deemed advisable by the said board as shown by
Section 6 of said act, and whenever the said board of public
works deem it advisable, or upon a petition signed by one-
third of the freeholders of the town of Gaffney, all of
which provisions are contrary to the Constitution.

"Wherefore, the petitioners pray for relief prayed for in
the petition herein."

*Messrs. Butler & Hall* for petitioner.

*Mr. J. C. Jeffries,* contra.

July 16, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an application to the Court,
in the exercise of its original jurisdiction, for a writ of
mandamus, requiring the respondents to sell certain bonds,
amounting to $125,000, for the extension of the electric

lights and water works and the installation of a sewerage system for the town of Gaffney.

The questions at issue will appear, by reference to the petition, the amended answer and the reply, which will be set out, in the report of the case.

The first ground of objection interposed by the respondents is, "that said election, and the bonds issued in pursuance thereof, are invalid and unsalable, and that the proposition submitted to the voters did not separately state the items, nor the amount of the bonds to be issued, for the extension of the electric lights, for the extension of the water works, and for the installation of a sewerage system."

The sixth section of the act of 1908 (which is set out in the answer of the respondents) requires that the amount of the bonds to be voted upon shall be set forth in the notice of the election to be held for the purpose of determining whether bonds shall be issued to extend the electrical light plant or water works in the town of Gaffney or to secure additional water supply for said town. And in the seventh section of said act it is likewise required that the amount of the proposed bonds shall be set forth in the notice of the election upon the question of issuing bonds for the purpose of establishing and building a system of sewerage for the said town.

The intention of the Legislature was that there should be separate and distinct statements as to the amount of the bonds, for electric lights and water works, and as to the amount of those for establishing a sewerage system; and that the question of issuing bonds for the extension of the electric lights and water works presented an entirely different proposition from that of issuing bonds for establishing a sewerage system.

Therefore, the failure to give notice of the amounts respectively of the proposed bonds and the failure to submit

the different propositions separately to the voters rendered the election illegal and the bonds invalid.

But even if the manner in which the different propositions were submitted to the voters is considered apart from the statute, the same result would follow.

In the well-considered opinion in the case of *Rea* v. *City of Lafayette,* 61 S. E. R. (Ga.), 707, it was ruled that when several distinct and independent propositions for the issuing of bonds by the municipality are submitted to the qualified voters of the town or city, provision should be made in the submission for a separate vote upon each. That they cannot be lawfuly combined as a single question. In that case the purpose declared in the resolution and notice was "to determine the question whether said city will issue bonds in the aggregate sum of forty thousand dollars, * * * said sum to be expended as follows, to wit: for the purpose of establishing and maintaining a system of water works, twenty-five thousand dollars; for the purpose of establishing and maintaining a system of electric lights, ten thousand dollars; for the purpose of improving and extending the public school of said city and providing adequate accommodations for school patrons and children of said city, five thousand dollars."

Mr. Chief Justice Fish in delivering the opinion of the Court used this language, page 708: "There may be in a given community such a strong sentiment in favor of incurring a public debt for a particular purpose—for instance, as providing adequate and suitable accommodations for the public schools—that by combining a proposition of this popular character with one to create a public debt for a wholly different purpose, which would not, as an independent measure, commend itself to the unbiased judgment of the voters, the unpopular proposition may obtain the requisite number of votes to insure its adoption. On the other hand, the sentiment against the last-mentioned proposition might be so strong as to cause the voters to

defeat the one in favor of the public schools, although if standing alone it would have received their hearty support. To present both propositions in a single submission, thus rendering the success of the one dependent upon the success of the other, or the defeat of the one dependent upon the defeat of the other, is clearly unfair to the voters and not at all conducive to a free and untrammelled expression of public sentiment as to the merits of either. And when the number of separate and distinct questions to be combined and embraced in a single submission increased, there is a corresponding increase in the unfairness of the mode of submission and of the chances that no true expression of the will of the people can be obtained. Another evil which might result from holding such a practice to be lawful is that a popular and meritorious measure might be purposely foredoomed to defeat by making its success dependent upon the adoption of some other measure known to be obnoxious to the people."

Mr. Justice Stockton delivering the opinion of the Court in *McMillan* v. *Lee County,* 3 Iowa, 311, 320, said: "The law, in our opinion, has provided no such mode of submitting these questions to the vote of the people. The evils which might be permitted to grow up under such a system are so obvious and apparent that any extended discussion of the question by us would be superfluous. It may be sufficient to suggest that if it were allowed measures in themselves odious and oppressive might, by means of it, become fastened upon a county which in no other way could have obtained the number of votes requisite to insure their adoption but by being connected with some other proposition which commended itself to the favor and suffrages of the people by its inherent merits and popularity. They must be adopted or rejected together. After the same manner a measure desirable and necessary to a people of a county may, when offered for their adoption, be rejected by their votes and fail to become a law by reason

10—83

of its connection with some other measure or measures unpopular and uncalled for. In either case there is an evil. An unpopular measure may be forced upon an unwilling people, or a necessary and desirable one may be denied them in spite of their wishes. It is sufficient for us to say that the law, in our opinion, intended to provide for no such system of contradictions. A measure wise and salutary in itself needs no adventitious assistance to recommend it to the suffrages of the people, or to insure its adoption by them. It may demand that its enactment into a law shall be made to depend upon their sanction alone. A pernicious measure is not entitled to such assistance, and should be permitted to stand or fall by its own inherent merits or defects."

In *Lewis* v. *Bourbon County,* 12 Kan., 186, 213, Mr. Justice Brewer thus stated the rule: "It may be conceded that two or more questions may be submitted at a single election, provided each question may be voted on separately so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined and the real will of the people overslaughed. By this combination an unpopular measure may be tacked on to one that is popular and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation for the benefit of a few. Things odious and wrong in themselves may receive the popular approval because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections that aims to secure freedom of choice, not merely between parties, but also in respect to every office to be filled and every measure to be determined. A voter at a State election would be shocked to be told that because he voted for a person named for governor on one ticket he

must vote for all other persons named thereon, or that voting for one person he was to be understood as voting for all. He would feel that his freedom of choice was infringed upon. None the less so it is by such a submission as this."

The principle is thus announced in *Tolson* v. *Police Jury,* 119 La., 215, reported in that valuable publication, Am. & Eng. Ann. Cases, Vol. 12, page 847: "The railway company agreed to divide the proposed tax with the public schools in the proportion stated in the petition; and this agreement was incorporated in the ordinance ordering the election, and in the notice of the election. The effect of this was that the taxpayers were not afforded an opportunity of voting for or against the railroad tax, but were compelled to vote upon a hybrid proposition, part railroad and part school tax. It can hardly be necessary to say that a vote cast for such a proposition is not a vote for or against a railroad tax within the intendment of the above-quoted Article 270 and of the statute carrying it into effect. These laws clearly contemplate that the distinct proposition—for or against the particular tax in question—shall be submitted to the voters. If the voter cannot vote against the railroad without at the same time voting against the public schools, or *vice versa,* he is not allowed a free exercise of his judgment. That mode of taking a vote is known in ordinary legislation as 'log rolling,' and is utterly condemned. Our Constitution expressly forbids the Legislature from having recourse to it, and *a fortiori* cannot the police jury use it in consulting the taxpayers upon any tax proposition? After a vote has been taken upon such a double-barreled proposition there is no certainty that a majority of the voters have united upon either of the two taxes. *Non constat,* in the instant case, that a majority of the voters would have favored the railroad tax if the school interest had not been enlisted in its favor." See also the note to that case.

In the note to *Leavenworth* v. *Wilson,* 69 Kan., 74, reported in 2 Am. & Eng. Ann. Cases, page 367, is the following statement of the rule: "It is well established that a proposition submitted to the voters of a municipal corporation, as to the issuance of bonds by the municipality, must not combine two propositions so that both propositions have to be answered by one expression of the vote, because a voter might thereby be induced to vote for both propositions when he would have voted for only one if the question had been submitted singly." (Citing numerous authorities.)

The petitioners in their reply have attacked the constitutionality of the act of 1908, hereinbefore mentioned, but this question cannot be considered, for the following reasons:

(1) Because the petition must be dismissed for the reason already stated. The rule is thus stated in Cool. Con. Lim., at page 163 (2d ed.), and quoted with approval in the case of *Ex parte Florence School,* 43 S. C., 11, 15, 20 S. E., 794: "Neither will a Court, as a general rule, pass upon a constitutional question and decide a statute to be invalid unless a decision upon that very point becomes necessary to the determination of the cause. * * * In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record presents some other and clear ground upon which the Court may rest its judgment and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when, consequently, a decision upon such a question will be unavoidable."

(2) Because Section 2009 of the Code of Laws provides that in the town of Gaffney the board of public works shall consist, *ex officio,* of the mayor, treasurer and clerk of the town council. This provision is still of force, unless repealed by the act of 1908. If that act is unconsti-

tutional, then the respondents are not the lawfully consti-
tuted board of public works of Gaffney and are, therefore,
without power to perform the duties which the petitioners
are seeking to require them to exercise.    A party invoking
the provisions of a statute is not in a position to raise the
question as to its constitutionalty.

*Port Royal Co.* v. *Hagood,* 30 S. C., 524, 9 S. E., 686,
3 L. R. A., 841; *Ex parte Florence School,* 43 S. C., 11, 20
S. E., 794; *Moore* v. *Napier,* 64 S. C., 564, 42 S. E., 997;
*State* v. *Morris,* 67 S. C., 153, 45 S. E., 178; *State* v. *Cain,*
78 S. C., 348, 58 S. E., 937.

The next ground urged against the validity of the bonds
is because the town council had no authority to provide
that the bonds should be payable in gold.    Section
4    2008 of the Code of Laws provides that such bonds
may be made payable in any legal tender money of
the United States.

As to the eighth ground of objection set out in the answer
of the respondents, we deem it only necessary to state that
it is plainly untenable.

It is the judgment of this Court that the petition be dis-
missed with costs.

MR. CHIEF JUSTICE JONES *and* MESSRS. JUSTICES WOODS
*and* HYDRICK *concur in the result upon the ground first
considered in this opinion.*