13161

McDANIEL v. BRISTOL ET AL.

(158 S. E., 804)

*Mr. William N. Levin,* for petitioner,

*Mr. W. Brantley Harvey,* for respondents,

June 1, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This cause, in the original jurisdiction of the Court, comes here by an order of Mr. Justice Stabler, enjoining the re-

spondents temporarily from issuing and selling certain municipal bonds of the city of Beaufort, and requiring them to show cause to the Court why the temporary injunction should not be made permanent.

The petitioner and the respondents have agreed upon the facts, and the substance of them is as follows:

The petitioner is a citizen, freeholder, and taxpayer of the city of Beaufort, a municipal corporation; and the respondents, as the duly qualified mayor and councilmen, compose the city council. The respondents propose to issue and sell, and have already contracted to sell, to the South Carolina National Bank serial bonds of the city of Beaufort, in the aggregate sum of $40,000.00, dated March 1, 1931, the first bond to be for $3,000.00, payable September 1, 1934, and thirty-seven other bonds, each in the sum of $1,000.00, payable annually thereafter until the year 1971, all of the bonds to bear interest at 5¾ per cent. per annum, payable semiannually. The proceeds of the bonds, as stated in the petition for the election held upon the issuance thereof, are "to be applied solely for the purchase of a waterworks plant and equipment and to operate same for the use and benefit of the City of Beaufort and the inhabitants thereof." The petition for the election was signed by a majority not only of the resident freeholders, but of all the freeholders of Beaufort, as shown by the tax books of the municipality. In the election, 110 votes were cast in favor of, and 7 against, the proposition submitted.

The petitioner contends that the issuance and sale of the bonds should be enjoined for three reasons, which we state as we consider the objections raised.

The first objection to the validity of the bonds is briefly set out by the petitioner in the argument of his counsel as follows: "There was no election on the question of whether or not the city would purchase the water works." This objection relates to the form of the question submitted to the electors in the election. The ballot voted contained this

question: "Shall the city of Beaufort issue bonds in the sum of Forty Thousand ($40,000.00) Dollars, if so much be necessary; the said bonds to bear interest at a rate not exceeding six (6%) per cent. per annum, and to be due and payable forty years after date, with the privilege reserved of redemption at such time as the City Council may fix in said bonds, the proceeds of said bonds to be applied solely for the purchase of the waterworks plant and equipment, and to operate same for the use and benefit of the city of Beaufort and the inhabitants thereof."

In the argument it is said:

"The petitioner respectfully submits that although a majority of the qualified electors of the city of Beaufort voted in favor of the issuance of bonds, that there has been no approval of the electors of the city of Beaufort of the purchase of the waterworks as required by the Constitution. The permission to purchase and the permission to issue bonds being in two separate sections of the Constitution, the question must be separately submitted.

"In carrying out the mandate of the Constitution the General Assembly provided that the question of purchase of waterworks and the question of issuance of bonds to pay for the waterworks must be submitted to the qualified electors separately. Section 4429 of Volume 3, Code 1922, provides that no purchase shall be made except upon a majority (vote) of the electors of such city or town who are qualified to vote on the bonded indebtedness of said city or town. And Section 3015, Volume 1, Code 1922, as amended by Act approved March 10, 1922, appearing at page 1795 of the appendix to Volume 3, Code of 1922, requires that the city or town shall submit the question of the purchase and the issuance of the bonds to the qualified electors.

"It appears clearly, therefore, that the electors must first approve the purchase and separately approve the issuance to pay therefor."

While it is not so stated in the argument, we think it likely that the position taken by the petitioner is due to ·a holding of this Court in such cases as *Ross v. Lipscomb,* 83 S. C., 136, 65 S. E., 451, 137 Am. St. Rep., 794; *Johnson v. Roddey,* 83 S. C., 463, 65 S. E., 626; *Chase v. Gilbert,* 83 S. C., 546, 65 S. E., 735; and *State ex rel. Watkins v. Brasington,* 93 S. C., 447, 76 S. E.; 1086. In the last-mentioned case, decided in 1913, on the authority of the *Ross* and *Johnson cases,* referring to the provisions of Section 3015 of Volume 1, Code of 1922, it was held: "In a municipal election for issuance of bonds for establishing waterworks and electric lighting plants, it is necessary to submit separately the amount proposed to be issued for each purpose." Syllabus.

The other cases mentioned made similar holdings. In the *Ross case* it was decided that there should have been a separate vote on the question of electric lights, waterworks, and sewerage. In the *Johnson case* a joint question as to waterworks and sewerage was submitted, and the Court held such submission was improper. In the *Chase case* it was said that the issuance of municipal bonds for waterworks and sewerage were two distinct propositions, and should have been submitted separately to the voters.

Section 4429, Volume 3, Code of 1922, was not contained in the Code of 1912. The provisions of that section came from an Act approved February 11, 1918 (30 Stat. 801). The section in full is as follows: "All cities and towns in this State are hereby authorized and empowered to incur bonded indebtedness and to own and possess property to any amount within the discretion of the municipal authorities of such towns and cities for the purposes of purchase, establishment and maintenance of waterworks plants, sewerage systems and lighting plants: Provided, That the question of such purchase or establishment shall be submitted to an election, and no such purchase or construction shall be made except upon a majority of the electors of such

cities or towns who are qualified to vote on the bonded indebtedness of said cities or towns: And provided further, That the question of incurring such indebtedness be submitted with favorable results to the freeholders of such municipalities by petition, and the qualified voters of such municipalities for decision according to the requirements of the Constitution of this State upon the question of other bonded indebtedness."

It is altogether probable that the Act of 1918, appearing as Section 4429, Volume 3, 1922 Code, was enacted to make clear the removal by the General Assembly of all legislative restrictions as to bonded indebtedness of municipalities, incurred for the purposes of purchase, establishment, and maintenance of waterworks plants, sewerage systems, and lighting plants, pursuant to an amendment to the Constitution ratified on February 3, 1911, which amendment removed the former constitutional restrictions as to such indebtedness. While the section, and the Act from which it came, carried, in harmony with the Constitution, the provisions that the questions of the purchase or establishment of waterworks plants, sewerage systems, and lighting plants, and the power to incur bonded indebtedness for such purposes, should be submitted to an election upon the petition of freeholders of municipalities, we do not think the provisions of the section, or the Act from which it was taken, attempted to set forth the formalities required for the holding of the election. Section 3015, Volume 1, Code of 1912, as amended from time to time from its adoption to the passage of the Act of 1918, still controlled as to the formalities required for submitting the necessary questions to the electorate.

Section 3015, Volume 1, 1912 Code, was amended several times. The section, as amended by several Acts, was adopted as Section 4430 in the Code of 1922. Both Section 3015, Volume 1, 1912 Code, and Section 4430, Volume 3, 1922 Code, were superseded by the Act of March 10, 1922 (32

Stat. 953), when the General Assembly struck out all of Section 3015 of the 1912 Code and inserted in lieu thereof an entirely new section to be known as "Section 3015" of Volume 1 of the Code of 1912. The general subjects of the legislation contained in the new enactment were the same as those legislated upon in Section 3015, Volume 1, 1912 Code, but there were many changes in the language formerly contained in Section 3015. As far as we have ascertained, the 1922 Act, as amended by an Act of 1927, referred to later, contains the last utterance of the legislative branch of our government on the subject of holding elections in municipalities upon matters pertaining to the construction, purchase, and operation of waterworks systems and electric plants and the issuance of bonds for such purposes. That Act carried a provision repealing all Acts or parts of Acts inconsistent with its terms, which repealing clause affected, not only the Code of 1912 and Acts amendatory thereof, but also applied to Section 4430, Volume 3, Code of 1922, the successor of Section 3015, since the Code of 1922 became effective on January 12th of that year, preceding the approval of the Act of 1922 on March 10th. If Section 4429, Volume 3, Code of 1922, to which the petitioner has invited our attention, is in any way inconsistent with the provisions of the Act of 1922, the latter Act has, of course, repealed such inconsistent provisions appearing in Section 4429. It is our opinion, however, that there are no inconsistencies in the two enactments. They may be easily harmonized, as we have already indicated, by regarding Section 4429 as relating to the restriction of bonded indebtedness and the Act of 1922 as going more fully into the purposes for which bonded indebtedness may be created and the manner in which it may be incurred.

We may add also that we find no language in Section 4429, Volume 3, Code of 1922, which would seem to require that there should be separate elections, or separate questions in one election, as to the purchase of a waterworks plant and

incurring bonded indebtedness to pay the purchase price of the plant.

Under the terms of the Act of 1922, we think it was entirely right, proper, and legal for the city council of Beaufort to submit to the voters in the election as one question only the matter of the purchase of the waterworks plant and the issue of the bonds to make payment of the purchase price. In that Act, the requirements as to the question to be submitted are set forth in the following language: *"Provided,* That before any bonds shall be issued, or any such construction, or purchase, or any such sale, or conveyance and disposal of any such property, or any part thereof, shall be made under the provisions of this section, the City or Town Council of the municipality shall submit *the question of such* construction or *purchase and the issue of such bonds,* or of such sale, conveyance and disposal of such property, to the qualified registered electors of the city or town, at an election to be ordered for that purpose by the City or Town Council to be conducted in accordance with the laws governing municipal elections." (Italics ours.) Act March 10, 1922 (32 Stat. 953).

The holdings in the *Ross, Johnson, Chase* and *Watkins cases* are not in conflict with the opinion we have expressed. The question here for our determination, even under the provisions of Section 3015 of Volume 1, Code of 1912, is altogether different from either of the questions raised in the mentioned cases. In those cases it was sought to join as one question the issuance of bonds for waterworks, electric lights, or sewerage, two or more. In this case, the question did not concern either electric lights or sewerage—it related solely to the purchase of a waterworks plant.

It is quite probable that the General Assembly, in formulating the Act of 1922, had in mind the expressions of Mr. Justice Gage, who spoke for this Court, in *Enterprise Real Estate Co. v. City Council,* 107 S. C., 492, 93 S. E., 184, 186. In that case, considering the purchase by the city of a

waterworks system, the distinguished jurist said: "But the appellants say, even though there was legal warrant to submit to the electors the question of purchase, yet that question ought to have been submitted in time before the election on a question of payment. A sufficient answer to that is that the Constitution does not make any such requirement. All it does say is that no purchase shall be made except upon a majority vote of the electors. We venture to think the 'common sense' of the subject is the contrary of that suggested by the appellant. The subjects of purchase and of purchase price are woven together; no sensible man buys before he knows the price, and whether the price shall be paid in cash or credit."

The proposition submitted to the voters of Beaufort asked them, in short, this main question: "Will you issue bonds in the sum of $40,000.00, the proceeds of which are to be applied solely for the purchase of the waterworks plant?" From the question, the voters of Beaufort knew they could not buy the plant unless the city could pay the purchase price; they knew the purchase price was $40,000.00, or less; they knew that the purchase price could only be paid by the issue of municipal bonds. When they answered "Yes" to that question, they clearly said to the city council: "Buy the plant at a price not exceeding $40,000.00, issue municipal bonds therefor, and pay the sellers the purchase price."

We must therefore decline to agree with the petitioner as to his first objection.

For his second objection, petitioner says that the bonds proposed to be issued and sold are not the kind of bonds petitioned for by the freeholders and voted favorably in the election, and therefore the respondents cannot legally issue and sell them.

The petition submitted by the freeholders requested the city council to issue bonds "in the sum of Forty Thousand ($40,000.00) Dollars, if so much be necessary; the said bonds to bear interest at a rate not exceeding six (6%)

per cent. per annum and to be due and payable forty years after date, with the privilege reserved of redemption at such time as the City Council may fix in said bonds." The question on the ballot, submitted to the voters in the election, followed the wording of the petition. By reference again to the statement of facts, it will be seen that the city council proposes to issue and sell serial bonds, the first of which is to mature September 1, 1934, within five years from the date of the bonds, and the others to mature annually, at the rate of $1,000.00 per year, the last bond to be paid in 1971. We assume that the last bond is payable on March 1, 1971, within forty years from the date of the issue.

The Act of 1922, which we have discussed before, gave specific provisions as to the bonds to be issued. It said: "* * * Cities and towns may issue coupon or registered bonds bearing interest at a rate not to exceed six per centum per annum, payable in any legal tender money of the United States of America, and fix the time of payment of such bonds in such matter [manner?] that the bonds shall mature and be payable in annual or other series or installments, or at such time as the City or Town council may fix in said bonds, but not exceeding forty years after date of issue with the privilege of redemption at such time as the City or Town Council may fix in said bonds." Act March 10, 1922 (32 Stat., 953).

The Act of 1922 was amended, as to the kind of bonds to be issued, by the provisions of Act No. 158 of 1927 (35 Stat., 263), entitled, "An Act to Prohibit the Issuance by the State, Counties or Other Subdivisions of any Bonds Other Than Serial Bonds and to Provide for the Retirement Thereof." With the exception of certain political subdivisions named in the Act, to which its terms are not applicable, and the city of Beaufort is not in the excepted class, the General Assembly directed that no political subdivision of the State should issue any bonds, other

than serial bonds, when the issue authorized exceeded the total amount of $20,000.00. Under the provisions of the Act, the first of the series of bonds is to mature within five years from the date of issue. The enactment does not contain any provision as to the final maturity of all the bonds. Accordingly, we must turn back to the Act of 1922, so far as bonds for the purchase of waterworks are concerned, to ascertain the final maturity date. In the Act of 1922, as will be seen from the quotation above, such bonds must mature within "not exceeding forty years after date of issue."

We construe both the petition on the part of the freeholders and the question voted on in the election as clearly indicating that the freeholders desired, and the voters approved, an issue of bonds, which were to mature not later than forty years after their date. Both the freeholders and the voters, as well as the city council and all others interested, were charged with knowledge of the legislative enactments of 1922 and 1927, to which attention has been directed. It is not necessary that the petition of freeholders, the notice of the election, or the ballot submitted in the election, should go into full detail as to the bonds to be voted upon and thereafter issue. To support this view, we call attention to certain language of Mr. Justice Hydrick for this Court: "The submission did not specify the rate of interest to be paid on the bonds. That was not necessary. The voters knew that the bonds must bear interest at some rate to be specified thereon, and they knew that the commissioners could agree to pay the highest rate allowed by statute, but no more, and also that they could, and presumably would, fix the lowest rate at which they could sell the bonds. It is impossible to submit every detail of such a transaction to popular vote. Some things must necessarily be left to the judgment and discretion of those whom the people have chosen to represent them." *Commissioners v. Bank of Dorchester,* 115 S. C., 183, 105 S. E., 32, 33.

We may well repeat also the language of Mr. Justice Woods in *Dick v. Scarborough,* 73 S. C., 150, 53 S. E., 86, 87, where the Court considered the wording of the question submitted as to the purchase of a waterworks plant: "But there is no statutory provision as to the form of the ballot, and the most that the Court can require in this respect is that the voter should have reasonable notice of the election and the issue it involved."

In this instance, the voters, freeholders, and city council all charged with knowledge of the laws on the subject, knew that, under the Act of 1922, the bonds must mature within forty years from their date, and they also knew that, under the provisions of the Act of 1927, the bonds must be serial, as specified in that Act. The city council is endeavoring to carry out the terms of these two Acts, and for that reason we are unable to find merit in petitioner's second objection.

The third objection interposed by the petitioner, in the language of his counsel, is this: "The bonds are being issued for the purchase of a waterworks plant and equipment and to operate same, and the Statutes of South Carolina do not authorize the issuance of bonds for the equipment and operation of a waterworks plant."

The Act of 1922 gives full power and authority to cities and towns to "purchase, operate, and maintain waterworks." The petition here requested an issue of bonds, the proceeds of which were to be applied "for the purchase of a waterworks plant and equipment and to operate same." A waterworks system is bound to have "equipment," and equipment is a part of the plant. We see no real difference in meeting between the language employed in the petition of the freeholders and the question submitted to the voters and that used in the statute, and think the objection raised is entirely without merit. See *Green v. City of Rock Hill,* 149 S. C., 234, 147 S. E., 346, and *Connolly v. Beason,* 100 S. C., 74, 84 S. E., 297.

420

It is the judgment of this Court that the permanent injunction sought by the petitioner be, and the same is hereby, refused, and that the restraining order heretofore issued be vacated.

MESSRS. JUSTICES COTHRAN, STABLER, CARTER, and BONHAM concur.