# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Gerard E. Ziegler; Brenda Barrington III; James Stephen Greene, Jr.; William A. Harbeson; David Messinger; South Carolina Public Interest Foundation; and Dorchester County Taxpayers Association, individually, and on behalf of all others similarly situated, Appellants,

v.

Dorchester County; Dorchester County Council; Charles D. Chinnis, George H. Bailey, Sr., Jay Byars, Willie R. Davis, Carroll S. Duncan, Larry Hargett and William R. Hearn, Jr., in their official capacities as members of Dorchester County Council, Respondents.

Appellate Case No. 2018-000395

—————————

Appeal from Dorchester County
Edgar W. Dickson, Circuit Court Judge,

—————————

Opinion No. 27885
Heard October 18, 2018 – Filed May 8, 2019

—————————

## REVERSED

—————————

W. Andrew Gowder, Jr., of Austen &Gowder, LLC, of Charleston and Michael T. Rose, of Mike Rose Law Firm, PC of Summerville, for Appellants.

Steve A. Matthews, of Haynsworth Sinkler Boyd, PA, of Columbia, for Respondents.

James G. Carpenter, Jr., of Greenville , for Amicus
Curiae, Edward D. Sloan, Jr.

---

**JUSTICE HEARN:** This case concerns the validity of a referendum question—passed during the 2016 elections—which granted the Dorchester County Council authority to issue up to $30 million in bonds for library facilities *and* up to $13 million for recreational facilities.  Finding there was no indication the voters did not understand it, the circuit court determined it was not improper.  Because the question contained two separate bond proposals and required voters to support both or neither, we hold it was unlawful.

## FACTUAL BACKGROUND

On July 18, 2016, the Dorchester County Council passed an ordinance ordering a referendum to be held during the November 8, 2016, elections.  The referendum sought to determine whether the county would be authorized to issue no more than $43,000,000 in general obligation bonds to construct new library and recreational facilities.  The question as written in the ordinance and to be placed on the referendum was:

> Shall Dorchester County, South Carolina be authorized to issue general obligation bonds in an amount not to exceed $30,000,000 for funding the acquisition of land and the design and construction of new library facilities in Summerville and North Charleston and general obligation bonds in an amount not to exceed $13,000,000 for funding recreational facilities, including the development of the Dorchester County Courthouse Park in St. George, the Ashley River Park and the Pine Trace Natural area in Summerville, and the development of hiking, biking and pedestrian trails, together with associated infrastructure, at various locations throughout the County?

On September 8, 2016, then-State Senator Paul Thurmond requested an Attorney General's Opinion on the legality of the wording of the Dorchester County bond referendum, as he believed a separate vote was required for each specific different purpose for which bonds are to be issued.  On September 30, 2016, the Attorney General's Office issued an opinion agreeing with Senator Thurmond.  The opinion concluded that "a court would likely determine neither the Constitution nor the General Assembly intended to give county council the authority to combine multiple separate issues for bond issuance into one referendum question."

On October 3, 2016, the Appellants—residents of Dorchester County, the Dorchester County Taxpayers Association, and the South Carolina Public Interest Foundation—sent the Attorney General's Opinion to the County. Appellants requested the County correct the question by separating the parks and libraries issues into two different questions to be voted on separately, or cancel the referendum. They also filed a complaint in circuit court seeking: (1) a declaratory judgment that including two questions in one referendum question was unconstitutional, violated South Carolina law and the intent of the General Assembly, violated public policy, and, as a result, the issuance of any bonds and any other action taken based on the results of the referendum would be null and void; (2) a permanent injunction enjoining Dorchester County from conducting the referendum; and (3) costs and attorneys' fees. No hearing was held prior to the election. In fact, no hearing was held until August 24, 2017.

The question remained on the ballot as written and the referendum was held as scheduled. The referendum passed with just over 60% of the vote. The Appellants did not file an amended complaint after the referendum was held. Respondents—Dorchester County and the individual members of the Dorchester County Council—filed a motion for judgment on the pleadings under Rule 12(c) of the South Carolina Rules of Civil Procedure.

The circuit court granted Respondents' motion. The court determined the issue was the intent of the bond question and whether the voters of Dorchester County understood its results, and concluded there were no factual allegations to suggest they did not. Appellants filed a Rule 59(e) motion, which was denied. Appellants appealed to the court of appeals, but the case was transferred to this Court pursuant to Rule 204(a) of the South Carolina Appellate Court Rules. To date, the bonds have not been issued.[1]

**ISSUE**

---

[1] While South Carolina courts will not reach the merits absent a justiciable controversy, we find such a controversy is present here. *Jowers v. S.C. Dep't of Health & Envtl. Control*, 423 S.C. 343, 353, 815 S.E.2d 446, 451 (2018).

Did the referendum question containing proposals to authorize bonds for library facilities and for recreational facilities comply with South Carolina law?[2]

## STANDARD OF REVIEW

Whether reviewing a grant of summary judgment or a judgment on the pleadings, we apply the same legal standards as the trial court. *Rodarte v. Univ. of S.C.*, 419 S.C. 592, 600, 799 S.E.2d 912, 916 n.11 (2017). We review questions of law *de novo*. *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

## DISCUSSION

Article X, subsection 14(4) of the South Carolina Constitution authorizes political subdivisions, such as counties, to incur general obligation bonded indebtedness for a "public purpose" that is also a "corporate purpose."[3] S.C. Const. art. X, § 14(4). Title 7 of the South Carolina Code applies to all elections in South Carolina. S.C. Code Ann. § 7-1-40 (1976). Section 7-13-400 provides, "[t]he form of ballot in an election on the issuance of bonds . . . shall be a statement of the question or questions" and must permit the voter to vote "In favor of the question" or "Opposed to the question." S.C. Code Ann. § 7-13-400 (1976).

We addressed the legality of the form of a bond referendum question in a similar context over 100 years ago. In *Ross v. Lipscomb*, 83 S.C. 136, 65 S.E. 451 (1909), "a majority of the freeholders of the town of Gaffney" signed a petition "asking for an election to be ordered to vote $125,000 bonds for the extension of the electric lights and waterworks and the installation of a sewerage system." 83 S.C. at 137, 65 S.E. at 452. In an election conducted pursuant to the petition, a majority of

---

[2] Appellants contend the circuit court erred in granting a judgment on the pleadings because there was a factual issue as to whether the question was misleading. *Lowery v. Shirley*, 234 S.C. 279, 282, 107 S.E.2d 769, 772 (1958). We find the question of law dispositive, and as a result, we need not decide this issue. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).

[3] Appellants argue the singular language of this provision requires counties to incur bonded indebtedness for a single purpose at a time. Respondents contend Section 2-7-30 of the South Carolina Code requires singular nouns to include plural forms. Because we find the question unlawful on separate grounds, we need not pass upon this issue. *Futch*, 335 S.C. at 613, 518 S.E.2d at 598.

Gaffney voters were in favor of the issuance of the bonds. 83 S.C. at 138, 65 S.E. at 452. As a result, the town council passed an ordinance authorizing and directing the issuance of coupon gold bonds to the amount not exceeding $125,000. *Id.* However, the board of public works "failed and refused" to sell the bonds. 83 S.C. at 139, 65 S.E. at 452.

Thereafter, petitioners—members of the Gaffney town council—sought a writ of mandamus requiring the board to sell the bonds. 83 S.C. at 142, 65 S.E. at 454. We noted, "The first ground of objection" by the board of public works "is 'that said election, and the bonds issued in pursuance thereof, are invalid and unsalable, and that the proposition submitted to the voters did not separately state the items, nor the amount of bonds to be issued, for the extension of the electric lights, for the extension of the waterworks, and for the installation of a sewerage system.'" 83 S.C. at 143, 65 S.E. at 454.

We held,

The intention of the Legislature was that there should be separate and distinct statements as to the amount of the bonds for electric lights and waterworks and as to the amount of those for establishing a sewerage system, and that the question of issuing bonds for the extension of the electric lights and waterworks presented an entirely different proposition from that of issuing bonds for establishing a sewerage system. Therefore the failure to give notice of the amounts, respectively, of the proposed bonds, and the failure to submit the different propositions separately, to the voters, rendered the election illegal and the bonds invalid.

83 S.C. at 143-44, 65 S.E. at 454. Although we interpreted a statute in reaching our decision, we also noted that "even if the manner in which the different propositions were submitted to the voters is considered apart from the statute, the same result would follow." *Id*. at 144, 65 S.E. at 454. This is because "when several distinct and independent propositions for the issuing of bonds by a municipality are submitted to the qualified voters of the town or city, provision should be made in the submission for a separate vote upon each. They cannot be lawfully combined as a single question." *Id*.[4]

---

[4] The General Assembly later adopted a statute specifically authorizing municipalities to incur bonds for water, sewage, and lighting plants in a single question. Act No. 462, 1918 S.C. Acts 801; S.C. Code of Laws § 4422 (1922).

Here, we agree with the circuit court that the referendum question was not misleading.  Indeed, it was quite clear that, if a voter wanted to authorize up to $30 million in funding for library facilities, he must also vote to fund up to $13 million for recreational facilities.  Libraries and recreational facilities are distinct for funding purposes.[5]  *See* S.C. Code Ann. § 4-9-30(5)(a) (Supp. 2017) ("each county government . . . shall have the following enumerated powers . . . : to assess property and levy ad valorem property taxes . . . and make appropriations for functions and operations of the county, including, but not limited to, appropriations for . . . recreation; . . . libraries"); *see also id.* §§ 4-9-35, 38-39.  As a result, the referendum question contained two separate questions, and therefore, it was not possible to vote "in favor" of one and "opposed" to another.  S.C. Code Ann. § 7-13-400.

Our precedent and the statutory requirements for referendum questions render the question here unlawful.  While Respondents argue Home Rule[6] delegated the authority to administer county bond referenda to local governments, they have cited no authority overruling *Ross*.  Section 5-7-30 of the South Carolina Code grants municipalities broad power to enact regulations, resolutions, and ordinances, so long as they are not inconsistent with the Constitution and general law of the State.  S.C. Code Ann. § 5-7-30 (Supp. 2017).  We hold the rule requiring separation of distinct county bond propositions into different referendum questions—espoused in *Ross* and reflected in Section 7-13-400—is part of this general law.

We find additional support for our holding in Eugene McQuillin's The Law of Municipal Corporations, which we have cited as persuasive authority.  *See S.C. Dep't of Transp. v. Revels*, 411 S.C. 1, 9, 766 S.E.2d 700, 704 (2014).  To wit:

> If there are two or more separate and distinct propositions to be voted on, each proposition should be stated separately and distinctly, so that a voter may declare his or her opinion as to each matter separately . . . .

---

However, the statute did not overrule the Court's decision in *Ross* or apply to other subjects.

[5] Respondents contend the single purpose of the referendum was to increase the county's debt limit.  Notably, however, this purpose was not presented to the voters, as it does not appear in the referendum question.

[6] *See, e.g.* S.C. Const. art. VIII.

Elections are invalid where held under such restrictions as to prevent the voter from casting his or her individual and intelligent vote on the object or objects sough to be attained. The object of the rule preventing the submission of several and distinct propositions to the people united as one in such a manner as to compel the voter to reject or accept all, is to prevent rejection of popular or necessary propositions that are joined with other measures that are not so popular or necessary. . . . This may be done on a single ballot, but the ballot must state each proposition separately, so that the voter may be able to express his or her will with reference to each question.

15 Eugene McQuillin, The Law of Municipal Corporations § 40:9 (2016).

Contrary to Respondents' assertions, our holding today does not require municipalities to obtain and issue separate bonds for each project they seek to undertake; nor does it impact the Capital Project Sales Tax Act.[7] We hold only that a ballot referendum proposing bonded indebtedness must contain a single question for each proposal to which voters can respond affirmatively or negatively.

## CONCLUSION

Based on the foregoing, we **REVERSE** the circuit court's decision and **REMAND** for entry of judgment consistent with this opinion.

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**

---

[7] S.C. Code Ann. § 4-10-300 *et seq*. (Supp. 2012).