(43 South. 1011.)

No. 16,504.

TOLSON et al. v. POLICE JURY OF ST. TAMMANY PARISH et al.

(May 27, 1907.)

1. POLICE JURY—RAILROAD AID—ELECTION—PETITION.

The police jury is authorized to order an election for voting a tax in aid of a railway enterprise only when thereto petitioned by one-third of the property tax payers entitled to vote at the election. When, therefore, the fact of the petition having been signed by the requisite number of voters is put at issue in a suit contesting the election, the burden of proof lies on the police jury, and is not discharged by proof of a committee having verified the signatures and found a sufficient number. The signatures themselves must be produced, or their absence supplied, in case of loss, by equivalent evidence.

2. SAME.

What must be mentioned in the petition to the police jury for the holding of an election to vote a tax in aid of a railway enterprise, under Act No. 202, p. 483, of 1898, is the amount of money to be realized from the tax, and not the rate of the tax. Bennett v. Police Jury, 36 South. 891, 113 La. 69, reaffirmed.

3. SAME.

Whether a corporation, which in the purposes of its organization is not restricted to a railway enterprise, may lawfully be the beneficiary of a tax under article 270 of the Constitution—quære. But certainly not without proper restrictions, whereby the aid would be confined to the railway enterprise.

4. SAME—SUBMISSION OF PROPOSITIONS.

In voting a tax under article 270 of the Constitution, the proposition of the particular tax must be submitted singly and on its own merits to the voters, and not so coupled with some other proposition that the voters cannot vote upon either proposition singly, but must vote for, or else against, both.

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Thomas Moore Burns, Judge.

Action by George R. Tolson and others against the police jury of St. Tammany parish and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Ellis & White, for appellant police jury. Clegg & Quintero (Miller & Morgan and Edward H. Richard, of counsel), for appellant St. Tammany & New Orleans Railways & Ferry Co. Pierson, Walton & Pierson, for appellees.

PROVOSTY, J. The plaintiffs, in their quality of citizens and taxpayers of the Third Ward of the parish of St. Tammany, contest the validity of an election by which said ward has voted a tax of five mills for ten years to the St. Tammany & New Orleans Railways & Ferry Company.

Among others, the following grounds of nullity are stated in the petition:

"First. That the petition to the police jury asking it to order said election was not signed by one-third of the property tax payers of said ward entitled to vote therein.

"Second. That the said petition praying for the calling of said election failed to state the amount to be realized each year from the proposed tax.

"Third. That the voters at said election did not vote for or against a tax in aid of a railway enterprise, or in aid of the construction of a railroad, but in aid of the St. Tammany & New Orleans Railways & Ferry Company, which is a pretended corporation, pretended to have been organized for many and various conflicting purposes, among which are the operation of ferryboats and steamships, warehouses, electric light plants, the speculation in lands, the digging and boring of wells, and the pumping, storing, distribution, and sale of water for use and consumption by individuals, etc., none of which aforementioned objects have any bearing on or connection with a railway enterprise or the construction of a railway.

"Fourth. That the voters at said election did not vote upon the question of levying a tax in aid of a railway enterprise, disconnected from any other question and uninfluenced by any other proposition, for the reason that the St. Tammany & New Orleans Railways & Ferry Company, the prospective beneficiary of the tax, proposed, contracted, and agreed, if the tax was voted by the taxpayers, to donate twenty (20) per cent. of said tax to the school fund of the Third Ward of the parish of St. Tammany, which proposition and agreement of the St. Tammany & New Orleans Railways & Ferry Company was made public prior to the election, for the purpose of influencing the election in favor of the tax, and which said proposition, contract, and agreement of the St. Tammany & New Orleans Railways & Ferry Company was annexed to and formed a part of the ordinance of the police jury ordering said election, and was therefore part of the proposition voted on at said election. That said election was therefore an illegal election, for the double purpose of deciding on a school tax and a railroad tax."

Before taking up the discussion of these grounds of nullity we will give the constitutional provision and the relevant parts of the enabling act under which the election was held.

Article 270 of the Constitution reads as follows:

"The General Assembly shall have the power to enact general laws authorizing the parochial, ward and municipal authorities of the state, by a majority of the property tax payers in number entitled to vote under the provisions of this Constitution and in value, to levy special taxes in aid of public improvements or railway enterprises, provided that such tax shall not exceed the rate of five mills per annum, nor extend for a longer period than ten years; and provided, further, that no taxpayer shall be permitted to vote at such election unless he shall have been assessed in the parish, ward or municipality to be affected for property for the year previous."

We will add that the qualification of the man voter under this act is that he be a resident property taxpayer and a qualified voter —that is to say, that he be a resident and over 21 years old, and be registered, and, furthermore, unless over 60 years of age, that he have paid a poll tax for the two years preceding the election—and that the qualification of the woman voter is that she be a taxpayer and a resident and be over 21 years old.

The pertinent parts of Act No. 202, p. 483, of 1898, the enabling act, read as follows:

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that the parochial, ward and municipal authorities of the state be and the same are hereby authorized to order elections in their respective parishes, wards or municipalities on the written petition of one-third of the property tax payers of such parish, ward or municipality, entitled to vote therein, and to levy special taxes in aid of public improvements or railway enterprises when authorized by a vote of the majority of the property tax payers in number entitled to vote under the provisions of the Constitution and in value, provided that such tax shall not exceed the rate of five mills per annum, nor extend for a longer period than ten years, and provided further that no tax payer shall be permitted to vote at such election unless he shall have been assessed in the parish, ward, or municipality to be affected for property in the year previous.

"Sec. 2. Be it further enacted, etc., that the petitions mentioned in section one (1) of this act shall be by the property tax payers, of such parish, ward or municipality, and shall designate the object and amount of the taxes to be levied each year and the number of years during which it shall be levied."

"Sec. 5. Be it further enacted, etc., that if a majority in number and assessed value of the property tax payers of such parish, ward or municipality, voting at such election, shall vote in favor of such special tax, then the police jury on behalf of such parish, or any ward therein, or the municipal authorities for and on behalf of such municipality shall immediately pass an ordinance levying such tax and for such time as may have been specified in the petition,

and shall designate the years in which such taxes shall be levied and collected."

"Sec. 7. Be it further enacted, etc., that the police jury of any parish, for said parish or any ward therein, or the municipal authorities of any municipality, shall, when the vote is in favor of the levy of said taxes, levy and collect annually in addition to other taxes, a tax upon all taxable property within said parish, ward or municipality, an amount sufficient to pay the amount specified to be paid in said petition, and such police jury and municipal authorities shall have the same authority and right to enforce the collection of such special tax as may be authorized by such election as is or may be conferred upon them for the collection of other taxes, which taxes so collected shall be used for the purpose named in said petition, and paid over when collected by the proper officers to the treasurer for the person or corporation entitled thereto, after deducting lawful commissions for collecting same."

We now proceed to take up the several grounds of nullity in their regular order.

First. That the petition did not have the requisite number of signatures. The assessment roll contains 1,217 names. The petition of taxpayers contains 523 names. However, a good many of the persons both on the assessment roll and on the petition were not qualified to vote at the election. Deducting from the assessment roll the men who were not registered, or who had not paid their poll tax in the years 1904 and 1905, and also the nonresident women, all of whom were disqualified from voting at the election, and we have 391 qualified voters. Of these, 59 men and 57 women signed the petition—a total of 116, or 15 less than the requisite 131, or one-third of 391.

Our computation and that of the learned judge a quo accord in respect to the number of qualified voters, but not in respect to the number on the petition; he having found 157. As the lists made by our learned brother are not in the record, we have had no opportunity of comparing lists and ascertaining wherein lies the discrepancy.

The learned counsel for defendants have very properly refrained from denying that a deficiency in the number of signatures on the petition is fatal to the election; but they,

in the oral argument, took the position that the court cannot be sure that the list of names, as appearing on the petition in the record, comprises all the names that were on the petition as presented to the police jury, because the petition as presented to the police jury was composed of a great many separate sheets of paper, and these sheets were very carelessly kept by the police jury after the names had been counted, and some of these sheets may have been lost. In the brief, the argument of counsel is that a committee of the police jury bestowed "the better part of two days" in verifying the signatures on the petition, and that the police jury adopted the report of said committee, and that "the court may more safely trust the work of the police jury than the calculations of counsel for plaintiffs, and, even if the maxim, 'Omnia præsumuntur,' etc., does not apply, the philosophy of it, at any rate, should govern the matter."

In answer to the first of these arguments, the court will say that the court cannot assume that any part of the petition has been lost, but, on the contrary, is bound to hold, in the absence of contrary proof, that the list in the record is the same that was before the police jury; furthermore, that the burden of showing that there was a petition, and that it contained the requisite number of signatures, is on the police jury, and that this burden would not be discharged by proof of who the signers of the petition were; and that, therefore, the loss of the petition would of itself be fatal to the election, unless the contents were in some way proved.

In answer to the argument that the court will let the result of the work of the police jury, rather than of that of plaintiff's counsel, decide this issue of whether or not the petition contained the requisite number of signatures, the court will say that it is not at liberty to surrender its judgment in the matter of either party. The court will add,

however, that, as will appear by the lists filed herewith, which need not be incorporated in the opinion, the computation of plaintiffs' counsel approximately accords with that of the court, there being a discrepancy of only one name between the court and counsel in regard to the number of qualified signers on the petition; whereas, the police jury found that the petition was signed by 436 qualified voters—that is to say, 320 more than the court found, and 45 more than there were in the ward.

The fact is that, even if the names had then been in alphabetical order, as they are in the record, we doubt very much that the amount of work that the court has been called upon to do in verifying and purging these lists—with their duplicate signatures, and their initials, instead of full names, and other complications and difficulties—could have been done by the committee of the police jury in any "better part of two days," unless, perhaps, the committee's acquaintance with the parties made the work easier to them than it is to one who has to be guided exclusively by the information to be derived from the record.

Our conclusion is that the petition did not have the requisite number of signatures, and that the election is for that reason void.

Having reached this conclusion, the consideration of the other points is not necessary for the decision of the case; but they having been submitted to the court, and being of a nature to give rise to further litigation between the same parties, the court deems it its duty to pass on them.

Second Ground of Nullity. The question of whether what should be mentioned in the petition to the police jury, under section 2 of Act 202 of 1898, should be the rate of the tax to be voted, and not the amount of money to be realized from the tax, was passed on by this court, after very careful consideration, in the case of Bennett v. Police Jury, 113 La. 69, 36 South. 891, and that decision was ratified in Railroad Co. v. Knowles, 117 La. 129, 41 South. 439, and the court sees no reason for now adopting a different conclusion. The act of 1886, whereof Act No. 202, p. 483, of 1898, is a re-enactment, required that the petition of the taxpayers should specify the "percentage" of the tax to be levied; and in the re-enactment the word "percentage," which is convertible in meaning with the word "rate," was ex industria, put aside, and the word "amount" adopted in its place. By Acts Nos. 145, 146, pp. 316, 317, of 1904, the Legislature amended Act No. 131, p. 200, of 1898, so as to read "rate" of the tax, instead of "amount" of the tax, but did not amend Act No. 202; thus confirming for Act No. 202 the interpretation put by this court in the Bennett Case upon the same language contained in Act No. 131.

Third Ground of Nullity. Under article 270 of the Constitution and Act No. 202, p. 483, of 1898, a tax can be voted only in aid of "public improvements and railway enterprises." This delegation of power to tax must be strictly construed. Cooley, Taxation (3d. Ed.) vol. 1, pp. 468–472.

The tax involved in this suit was voted "in aid of the St. Tammany & New Orleans Railways & Ferry Company," a corporation organized for all the various purposes recited hereinabove in plaintiffs' third ground of nullity. Nothing, either in the ordinance ordering the election, or in the form of ballot used in the election, which read: "For special tax of five mills in aid of the St. Tammany & New Orleans Railways & Ferry Company"— restricts the purpose of the tax to the aid of a railway enterprise. For all that appears, therefore, the tax has been voted as much for the other purposes of the intended beneficiary's organization as in aid of a railway enterprise. Whether a corporation not restricted to a railway enterprise in the purposes of its organization may lawfully be

the beneficiary of a tax under article 270 of the Constitution—quære. But certainly not without proper restrictions, whereby the aid would be confined to the railway enterprise. We may mention, in passing, that the assertion is made by counsel that the proposed aid in this case would exceed the cost of the railway part of the enterprise in question. The conclusion is inevitable that on this third ground, also, the election is void.

Fourth Ground of Nullity. The facts on which this fourth ground of nullity is based are correctly stated in the petition. The railway company agreed to divide the proposed tax with the public schools in the proportion stated in the petition; and this agreement was incorporated in the ordinance ordering the election, and in the notice of the election. The effect of this was that the taxpayers were not afforded an opportunity of voting for or against the railroad tax, but were compelled to vote upon a hybrid proposition, part railroad and part school tax. It can hardly be necessary to say that a vote cast for such a proposition is not a vote for or against a railroad tax, within the intendment of the above-quoted article 270 and of the statute carrying it into effect. These laws clearly contemplate that the distinct proposition—for, or against, the particular tax in question—shall be submitted to the voters. If the voter cannot vote against the railroad without at the same time voting against the public schools, or vice versa, he is not allowed a free exercise of his judgment. That mode of taking a vote is known in ordinary legislation as "log-rolling," and is utterly condemned. Our Constitution expressly forbids the Legislature from having recourse to it, and a fortiori cannot the police jury use it in consulting the taxpayers upon any tax proposition. After a vote has been taken upon such a double-barreled proposition, there is no certainty that a majority of the voters have united upon either of the two taxes.

Non constat, in the instant case, that a majority of the voters would have favored the railroad tax, if the school interest had not been enlisted in its favor.

"In submitting the question of a grant of municipal aid to a railway company, the proposition should be submitted singly and disconnected from any other question, so that the voters may vote directly upon the grant uninfluenced by other questions." 20 A. & E. E. 1111.

In the brief of the learned counsel for plaintiffs a number of cases from other jurisdictions are cited as having decided that an election held in this ad captandum fashion does not allow of a free expression of opinion and is therefore null. We have not deemed it necessary to read these cases; but we have no doubt that their doctrine is as stated by counsel. They are McMillan v. County Judge, 3 Iowa, 318; Lewis v. Bourbon County, 12 Kan. 212; Clarke v. Hancock County, 27 Ill. 305; Fulton Co. Sup'rs v. M. W. R. Co., 21 Ill. 338; People v. Tazewell, 22 Ill. 147; Brown v. Carl Mayer, 82 N. W. 1033, 111 Iowa, 608. The learned counsel for defendants have referred us to no cases where a contrary view had been taken. On this fourth ground of nullity, also, the election must be held to have been void.

We do not pass upon the other grounds of nullity set forth in the petition, as they are not likely to recur, and hence are not necessary to be decided.

Judgment affirmed.

LAND, J. I concur in the decree.