FELIPE SÁNCHEZ OSORIO, Plaintiff and Appellee, *v.* SOFÍA DE VIZCARRONDO MONGRAND ET AL., Defendants and Appellants.

No. 5318. Argued July 10, 1933.—Decided May 22, 1934.

*A. Marín* for appellants.  *L. Feliú* for appellee.

ON MOTION FOR REHEARING

MR. JUSTICE WOLF delivered the opinion of the court.

In their motion for reconsideration the appellants insist with a considerable display of authorities that where the stenographer's notes are lost without any fault on the part of the appellant, the courts will as a rule order a new trial. We were fully aware of the general principle when we delivered our original opinion.

We find no reason to change our original idea that such a motion should ordinarily be made in the district court. We did not, and can not, agree with the appellants that the fact that the statutory time for filing an ordinary motion for a new trial has elapsed, would prevent the appellants in this kind of extraordinary case from presenting such a motion. Without such an attempt in the court below, we can not be convinced in this case either that the loss could not have been supplied or that it might not have been shown that the missing notes were unimportant for the purposes of the appellants.

We are entirely agreed with the appellants that this court has a residuary power to grant a new trial whenever it thinks the justice of the case would so require. What we were

insisting upon was that a motion to that effect should ordinarily be made. We said that a formal motion was necessary, but what we meant to imply was that some proceeding with notice to the other side should be had in this court. The appellants did not exclude the possibility that if a motion for a new trial had been made in the lower court, some relief might not have been obtained, and did not even exclude the possibility that there might. have been some fault in the appellants or in the stenographer whose services they used. We lay no great stress on the point, but we have decided in a number of cases that where the appellant relies on the notes of the stenographer, the latter becomes the agent of the appellant. In a proper case, as some of the decisions say, we might dispense with all this in the interest of justice. In this court no motion, petition, or notice to the other side was given, except in the regular brief of the appellants. In some of the cases cited by the appellants it is clear that the court was put in a position to be able to judge of the merits of the particular application. That some sort of a formal proceeding is necessary is the conclusion at which we arrive, and we see no reason to change it, always with the reserve that this court has the inherent power to order a new trial when the ends of justice so require.

The appellants refer to a note in 25 L.R.A. (N.S.) 806. On page 867 the title of the note is: ''The death or default of the official stenographer.'' The text says: ''So, appellant was held to a new trial where he was deprived of the bill of exceptions by the default of the official stenographer.'' The first case that is cited and which we have taken in hand is *Curran* v. *Wilcox*, 6 N. W. 762. The opinion begins: ''This is a petition for a new trial.'' Taking another case, *Holland* v. *Chicago R. Co.*, 71 N. W. 989, the petition was made in a court of equity to cover the loss of the notes. Likewise we refer to *Barton* v. *Burbank*, 119 La. 223, also cited. In this case there was a motion in response to a motion to dismiss. In this last-named case reference is

made to *Evans* v. *Murphy*, 11 Rob. 477. Here there was a diminution of record—a very formal proceeding. We have not pretended to examine all the jurisprudence cited.

What we held and are holding is that the jurisdiction of one or other of the courts must be invoked with notice to the other side, and that the brief of the appellants is not the place wherein the motion should be made. The position we have taken is like a rule of court. The practice must ordinarily be followed although the court reserves the right to make exceptions. Take for analogy a motion to dismiss for failure of the appellant to obtain an extension of time in the lower court to present the transcript of the evidence. Usually a motion should be made in this court for a new term. Nevertheless, on certain occasions without such a motion we have allowed a new term to the appellant where we thought the interests of justice so required.

Let us examine the instant case again. The plaintiff presented a complaint. The defendants presented three cross-complaints containing about five causes of action. It was principally the testimony referring to the plaintiff's case in chief that could not be found. On the other hand, part of the defendants' evidence was preserved. The defendants put on the stand their own expert and it was he who arrived at a definite conclusion of the amount due by reason of the current accounts between the parties, and the court below based its decision on that report. It would appear that the court in grand measure relied on the evidence produced by the defendants themselves. The plaintiff also appealed, maintaining that the amount awarded was not sufficient, but by reason of the loss of the stenographer's notes he abandoned his appeal. We think that, so far as the defense of the plaintiff's case is concerned, the defendants had a full day in court and should not have been heard further.

One matter alleged by the plaintiff-appellee was not referred to in our original opinion. He drew attention to the fact that in the original trial various witnesses appeared before

the court and the judge in weighing the evidence might have been influenced by the conclusions as to veracity at which he arrived on hearing the evidence on the original complaint. It is evident to us that, excepting for this, contention of the plaintiff-appellee, namely, the supposed credibility of the witnesses, the appellants had before this court all of the evidence that they needed in discussing their cross-complaints. Aside from the adjective matters we have already discussed, the credibility of the witnesses with respect to the cross-complaints is fully displayed in the transcript of the evidence before us.

Reverting then to the general principles, we are more than ever convinced that in Puerto Rico, where the facts are reviewed exclusively by the judge, the practice we have announced is a salutary one, and the facts of this case illustrate the advisability of adhering to it.

A number of pages of the transcript of the evidence in this case is dedicated to an incident wherein the plaintiff challenged the right of the expert of, the defendants to examine the books presented by the plaintiff, in order that the said expert might arrive at his conclusions as to the amount due the plaintiff. The purpose of this disquisition is to show that complete justice was done between the parties, so far as the plaintiff's claim was concerned.

The proponent of the motion for reconsideration complains of the action of the court below in allowing interest, not from the date of the judgment, but from the date of the complaint. The principal amount allowed by the court, subject to deduction, was some $1,100. If the plaintiff was entitled to that amount, it does not seem unreasonable to us that he should recover from the date of the filing of the complaint. That gave the defendants an opportunity, if they did not have it before, to deposit into court the amount due if their cross-complaints failed, as they did, to a large extent.

The appellants maintain that the account was not liquidated. We feel bound to hold that it was either liquidated

or potentially so because practically all the individual items claimed by both parties were or became liquidated. It was only a question of reducing the difference to certainty.

Assuming for the moment that we have the right to examine the record to consider the merits of the claims of the cross-complaints, the appellants do not convince us that the court was mistaken in not allowing $750.33, the amount claimed by them for the failure of the appellee to cultivate the property. The cultivation was relatively a great one and if the claim of the appellants reduces itself to such a small amount, we are quite convinced that there was not enough in the record to say that the court was mistaken in not awarding the $750.33 as damages. There was a conflict of the evidence in this regard and, as we have intimated, the cross-complainants did not satisfy the court below that there was a real claim for damages, and do not satisfy us. The testimony of the cross-defendant tended to show that he was using his best judgment in cultivating the property, and the possibility is not excluded that when in 1922 or 1923 he did not cultivate the property agreed upon (if he did not do so) the cross-complainants were not really damaged by this failure.

There was also a claim for $7,053, based on the seventh clause of the contract of lease, inasmuch as the cross-defendant failed to leave the ratoons on the field when the contract was terminated so that, if they desired, the cross-complainants could have gone on cultivating the field with such ratoons still in existence and growing. The evidence of the cross-complainants for us is lacking in a sufficient demonstration that the ratoons that were left in 1925 would have been available for future crops. In any event, we could not agree with the appellants that any real estimate could be made of what these damages were, if any. One of the defendants' own witnesses testified that there are periods when it is better to cut down the remaining ratoons and make a new planting and at other times it is advisable to go on with the old

ratoons. *Non constat* that when the property rented to Sánchez Osorio was turned over to the cross-complainants, as it was, they 'were in a perfectly good position to go on cultivating themselves. Their own expert testified that the lands were excellent for cultivation. To show the extraordinary grounds on which the counter-complainants relied one only has to consider that they would only have been entitled to 20% of the value of the ratoons and, therefore, as they claimed $7,053, their estimated value of the ratoons was more than $35,000. Naturally, the court could have given a small amount, but this exaggerated claim throws some light on the value to be given to the testimony of the experts of the cross-complainants. The expert of the cross-defendant, the plaintiff in this case, testified that the ratoons had no value, and the court apparently thought that this constituted a conflict in the evidence. Under these circumstances, we find no reason for going against the conclusion of the court below.

Both with respect to this claim for $7,053 and also that for $750.33, we can not be sure that there might not have been something in the lost evidence that might likewise have affected these questions. These are all the questions that we deem advisable to discuss.

We also draw attention to the fact that the assignment of errors was not sufficiently specific; that the appellants started to discuss the second and third assignments and only discussed the second; that under a so-called fourth assignment of error which related to something else, they proceeded to take up the third assignment of error. We are aware that the appellants felt hurried in the preparation of their brief, but they nevertheless also failed at times to refer to the proper pages of the record and we had to find them for ourselves. Likewise the brief is not typewritten as clearly as it should.

The reconsideration will be denied.