FELIPE SÁNCHEZ OSORIO, demandante, contrademandado y apelado, *v.* SOFÍA DE VIZCARRONDO MONGRAND, LORENZO F. VIZCARRONDO, ELISA VIZCARRONDO DE GONZÁLEZ y DOLORES VIZCARRONDO DE URRUTIA, demandados, contrademandantes y apelantes.

No. 5318.—*Sometido:* Julio 10, 1933. *Resuelto:* Mayo 22, 1934.

*A. Marín,* abogado de los apelantes; *L. Feliú,* abogado del apelado.

EN MOCION DE RECONSIDERACION

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

En su moción para reconsiderar, los apelantes insisten, con numerosas citas de autoridades, en que cuando se pierden las notas taquigráficas sin culpa alguna de parte del apelante, las cortes por regla general ordenan un nuevo jui-

cio. Conocíamos perfectamente el principio general cuando emitimos nuestra opinión original.

■ No hallamos razón alguna para cambiar nuestra idea original de que tal moción debe de ordinario presentarse en la corte de distrito. No convinimos, ni podemos convenir, con los apelantes en que el hecho de que el período estatutario para radicar una moción ordinaria solicitando un nuevo juicio haya transcurrido, impediría a los apelantes en esta clase de caso **extraordinario** presentar tal moción. Sin semejante **tentativa en la corte inferior, no** se nos convence tampoco en este caso de que la pérdida no pudo ser suplida, o que no pudiera demostrarse que las notas perdidas carecían de importancia para los fines de los apelantes.

■ Estamos enteramente de acuerdo con los apelantes en que a esta corte queda poder para conceder un nuevo juicio cuando crea que la justicia del caso así lo exige. En lo que insistíamos era en que una moción a ese efecto debe ordinariamente presentarse. Dijimos que era necesario radicar una moción formal, mas lo que quisimos significar fué que debía tener lugar en esta corte algún procedimiento del cual se daría traslado a la parte contraria. Los apelantes no excluyeron la posibilidad de que si se hubiese presentado una moción de nuevo juicio en la corte inferior, no habría podido obtenerse algún remedio, y ni aún excluyeron la posibilidad de que hubiese podido haber alguna falta de parte de los apelantes o del taquígrafo cuyos servicios utilizaron. No damos gran énfasis a este punto, pero hemos resuelto en un número de casos que cuando la parte apelante descansa en las notas del taquígrafo, este último se convierte en el agente del apelante. En un caso adecuado, según expresan algunas de las decisiones, quizá podríamos hacer caso omiso de todo esto en interés de la justicia. Ante esta corte no se presentó moción o petición ni se dió traslado alguno a la parte contraria, a no ser en el alegato corriente de los apelantes. De algunos de los casos citados por los apelantes se desprende claramente que se puso a la corte en posición de juzgar los mé-

ritos de la solicitud en particular. La conclusión a que llegamos es que se hace necesario algún procedimiento formal, y no vemos razón alguna para cambiarla, siempre con la reserva de que esta corte tiene facultad inherente para ordenar un nuevo juicio cuando los fines de la justicia así lo exijan.

Los apelantes hacen referencia a la nota que aparece en 25 L.R.A. (N. S.) 806. En la página 867 el título de la nota es: "Muerte o incumplimiento del taquígrafo oficial." El texto dice: "Igualmente, se concedió a la parte apelante un nuevo juicio cuando por incumplimiento del taquígrafo oficial se vió privado del pliego de excepciones." El primer caso que se cita y que hemos revisado es *Curran* v. *Wilcox*, 6 N. W. 762. La opinión comienza: "Se trata de una petición de nuevo juicio." Tomando otro caso, el de *Holland* v. *Chicago R. Co.*, 71 N. W. 898, encontramos que la moción se hizo en una corte de equidad para subsanar la pérdida de las notas. De igual modo nos referimos a *Barton* v. *Burbank*, 119 La. 223, que también se cita. En ese caso se presentó una petición en respuesta a una moción para desestimar. En este último se hace referencia al de *Evans* v. *Murphy*, 11 Rob. 477. En ése hubo una disminución de los autos —un procedimiento muy formal. No hemos pretendido examinar toda la jurisprudencia citada.

Lo que resolvimos y resolvemos es que debe invocarse la jurisdicción de una u otra corte, notificándose a la parte contraria, y que el alegato de los apelantes no es el sitio en que **debe hacerse esa moción.** La posición que hemos asumido es similar a una regla de la corte. El procedimiento debe ordinariamente seguirse aunque la corte se reserve el derecho a hacer excepciones. Tomemos por analogía una moción para desestimar por haber dejado la parte apelante de obtener una prórroga en la corte inferior para archivar la transcripción de la evidencia. Generalmente debe presentarse ante esta corte una moción solicitando un nuevo término. No embargante, en ciertas ocasiones sin tal moción hemos concedido

un nuevo término al apelante cuando a nuestro juicio los intereses de la justicia así lo exigían.

Examinemos nuevamente el presente caso. El demandante radicó una demanda. Los demandados presentaron tres contrademandas que contenían unas cinco causas de acción. Principalmente la evidencia que faltaba era la presentada por el demandante para probar su caso. Por otro lado, se preservó parte de la evidencia de los demandados. Éstos hicieron ocupar la silla de los testigos a su propio perito y él fué quien llegó a la conclusión definitiva respecto a la suma adeudada con motivo de las cuentas corrientes entre las partes, y la corte inferior basó su decisión en ese informe. Se desprendería de esto que la corte en gran parte descansó en la evidencia ofrecida por los mismos demandados. El demandante también apeló sosteniendo que la suma concedídale no era suficiente, mas debido a haberse perdido las notas taquigráficas abandonó su apelación. Creemos que en lo que a la defensa del caso del demandante se refiere, los demandados tuvieron su día en corte y no debió oírseles más.

En nuestra opinión original no hicimos referencia a una cuestión alegada por el demandante y apelado. Éste nos llamó la atención hacia el hecho de que en el juicio original varios testigos comparecieron ante la corte, y a que el juez, al apreciar la prueba, quizá podía ser influído por las conclusiones en cuanto a veracidad a que llegó al oír la prueba en el juicio original.

Para nosotros es evidente que a no ser por esta contención del demandante y apelado, o sea, la supuesta credibilidad de los testigos, los apelantes tenían ante esta corte toda la prueba que necesitaban para discutir sus contrademandas. Fuera de las cuestiones de derecho adjetivo ya discutidas, la credibilidad de los testigos con respecto a las contrademandas aparece plenamente demostrada en la transcripción de la evidencia que tenemos a la vista.

Refiriéndonos nuevamente al principio general, estamos más convencidos que nunca de que en Puerto Rico, donde los

hechos son revisados exclusivamente por el juez, la práctica que hemos anunciado es saludable, y los hechos de este caso ilustran lo recomendable que es seguirla.

Se dedica un número de páginas de la transcripción de la evidencia en este caso a un incidente en que el demandante impugnaba el derecho del perito de los demandados a examinar los libros presentados por el demandante, a fin de que dicho perito pudiera llegar a sus conclusiones respecto a la suma adeudada al demandante. El objeto de esta disquisición es demostrar que se hizo absoluta justicia entre las partes en lo que a la reclamación del demandante concernía.

El promovente de la moción para reconsiderar se queja del proceder de la corte inferior al conceder intereses, no a partir de la fecha de la sentencia, sino a partir de la fecha de la radicación de la demanda. La suma principal concedida por la corte, sujeta a deducción, fué unos $1,100. Si el demandante tenía derecho a dicha suma, no nos parece irrazonable que obtenga intereses a contar de la fecha en que se radicó la demanda. Eso dió a los demandados, si no la tenían antes, la oportunidad de depositar en corte la suma adeudada, en caso de que no tuviesen éxito en sus contrademandas, según ocurrió en gran parte.

Los apelantes sostienen que la cuenta no era líquida. Nos sentimos obligados a resolver que era líquida o potencialmente así, porque todas las partidas individuales reclamadas por ambas partes eran o se convirtieron en líquidas. La cuestión se reducía a determinar con certeza la diferencia.

Asumiendo por el momento que tenemos derecho a examinar los autos con el propósito de considerar los méritos de las reclamaciones de los contrademandantes, los apelantes no nos convencen de que la corte inferior estuviese equivocada al no concederles $750.33, o sea, la suma reclamada por ellos por haber dejado el apelado de cultivar la finca. El cultivo era una obra relativamente grande, y si la reclamación de los apelantes se reduce a una suma tan pequeña, estamos bastante convencidos de que en los autos no aparecía lo su-

ficiente para demostrar que la corte estuviera equivocada al no conceder la suma de $750.33 como daños y perjuicios. Hubo conflicto de prueba a este respecto y, conforme hemos indicado, los contrademandantes no convencieron a la corte inferior de que había una verdadera reclamación sobre daños y perjuicios, ni tampoco nos convencen de ello a nosotros. El testimonio del contrademandado tendió a demostrar que usaba de su mejor criterio en el cultivo de la finca, y no queda excluída la posibilidad de que cuando en 1922 ó 1923 no cultivó la finca en cuestión (de no hacerlo así) los contrademandantes no fueron realmente perjudicados.

Hubo también una reclamación por la suma de $7,053, basada en la cláusula séptima del contrato de arrendamiento, toda vez que el contrademandado no dejó los retoños en la finca a la terminación del contrato, de tal forma que si los contrademandantes deseaban, podían continuar cultivando la finca con los retoños que aún existían y que se hallaban en estado de crecimiento. La prueba de los contrademandantes, a nuestro juicio, deja de demostrar suficientemente que los retoños que quedaron en 1925 no hubiesen servido para cosechas futuras. Sea ello como fuere, no podemos convenir con los apelantes en que podía hacerse un verdadero estimado de estos daños, en caso de que los hubiere. Uno de los propios testigos de los demandados declaró que hay épocas en que es mejor cortar los retoños restantes y sembrar una nueva plantación y otras en que es mejor continuar con los antiguos retoños. *Non constat* que cuando la finca cedida en arrendamiento a Sánchez Osorio fué entregada a los contrademandantes, como lo fué, ellos estaban en buena posición para continuar cultivándola. Su propio perito declaró que los terrenos eran excelentes para el cultivo. Para demostrar los motivos extraordinarios en que los contrademandantes descansaban, uno sólo tiene que considerar que ellos únicamente hubiesen tenido derecho al 20 por ciento del valor de los retoños, y, por tanto, que como pedían la suma de $7,053, el valor dado por ellos a los mismos excedía de $35,000. Na-

turalmente, la corte pudo concederles una pequeña suma, mas esta reclamación exagerada arroja alguna luz sobre el peso que debe dársele al testimonio de los peritos de los contra-demandantes.

El perito del contrademandado, demandante en este caso, declaró que los retoños no tenían valor alguno y la corte inferior aparentemente creyó que esto constituía un conflicto de prueba. Bajo estas circunstancias, no hallamos razón alguna para ir contra la conclusión de la corte inferior.

Tanto con respecto a esta reclamación por $7,053 como con respecto a los $750.33, no podemos estar seguros de que no hubiera algo en la prueba perdida que igualmente afectara estas cuestiones. Éstas son todas las cuestiones que consideramos prudente discutir.

También deseamos llamar la atención hacia el hecho de que el señalamiento de errores no era suficientemente específico; que los apelantes empezaron a discutir los señalamientos segundo y tercero y sólo discutieron el segundo; que bajo un supuesto cuarto señalamiento de error que se refería a algo distinto, procedieron a argumentar el tercer señalamiento. Nos damos cuenta de que los apelantes tuvieron prisa en la preparación de su alegato, pero no obstante ellos también dejan a veces de referirse a las páginas correspondientes de los autos y nosotros mismos hemos tenido que buscarlas. De igual modo, el alegato no ha sido escrito a máquina con la claridad que debía.

*Debe declararse sin lugar la reconsideración.*